Our next case on today's oral argument docket is 525-0769, Deadmond v. Wildhaber. I think we had a last-minute pitching change. Ms. Webb, Mr. Watson was on our docket, but Ms. Webb is here for us today, correct? Correct. And we've got Mr. Cagle, correct? Yes, sir. Okay. Are you ready to proceed? Yes, sir. May I please report, counsel? My name is Julie Webb, Craig and Craig, and I am here on behalf of the defendant, Mr. Wildhaber, on this case. This case arises from a personal injury case. There's no dispute that the defendant was intoxicated, caused a motor vehicle accident, which resulted in very serious injuries to the plaintiff. Following a jury trial, the jury returned a penitentiary verdict of $5.95 million and a finding that the defendant's actions were willful and wanton, resulting in a finding that they could continue with the punitive damage phase of the case. And following evidence in the punitive damage phase, the jury returned a verdict of $29.5 million against the defendant. The punitive damages award in this case violates the defendant's due process rights under the 14th Amendment. The 14th Amendment prohibits imposition of grossly excessive or arbitrary punishments on a tort feeser. There's no question here that punitive damages are permissible in this case. It's the excessive amount of the punitive damages that's the issue in dispute. Whether the amount of the punitive damages violated the due process clause of the Constitution is the only issue in this case. Penitentiary damages are not in dispute. Punitive damages, the purpose of those are to punish the defendant for his egregious conduct, to deter the defendant from further conduct, similar conduct, and also to act as a deterrent to others from committing similar conduct. Punitive damages are not for the purposes of awarding compensation to the plaintiff. The compensatory damages in this case are the award that compensates the plaintiff for his damages. If the award is grossly excessive or imposes arbitrary punishment on a defendant, then it violates the due process clause. So how is this arbitrary and how is this excessive under the circumstance of this case? In this case, the punitive damages are so large that it exceeds the legitimate purpose for What's the legitimate purpose that's being exceeded? In this case, the jury did not take into consideration the financial status of the How do you say that? They were instructed on that. They heard evidence of his ability to pay. So they did consider it. You may disagree with them. But how is it not being considered by them? Well, it's something that wasn't considered because, yes, they were provided the evidence. So we've got to assume that the jury considered it. But this is just so excessive and unreasonable in light of the defendant's financial situation. A lesser amount of punitive damages would have been sufficient for providing the purposes of punitive damages in this case. Who's to say what is sufficient when the jury's been instructed and heard all the evidence concerning this particular defendant's propensity for this type of action? The serious, very serious injuries that were sustained by the victim in this case. How is this not? How are we supposed to change what the jury felt was appropriate? In this case, the jury instructions are that the punitive damages must be reasonable. This, in light of the defendant's financial situation, is not a reasonable award of punitive damages. Is the fine and compensatory reasonable under this defendant's financial ability? The compensatory damages are awarding the damages sustained by the plaintiff. That's what the jury decided the extent of the compensatory damages. So this defendant isn't going to be able to pay that. That's, we don't know what the financial condition, I mean, you would think probably not. Six million dollars is a significant compensatory award for the individual who, at the time of the award, was incarcerated with no employment, essentially no assets, because he owned nothing. And the jury was, well, they were not aware of that in the compensatory phase, of course, but in the punitive damages phase they were aware of his financial condition. Yet this award exceeded what is reasonable when you consider whether it's a violation of the due process, whether it is an arbitrary deprivation of the defendant's property. A lesser amount of punitive damages in this case would have sufficiently sent a message to not only this defendant, but also other potential defendants as to this behavior and the egregious nature of this behavior and the potential for punitive damages arising out of this type of behavior. So this defendant, if the punitive damage award would have been one million dollars, would be here arguing that he can't afford to pay the one million dollars. So if it's one million, twenty million, or a hundred million dollars, what's the difference? Well, I don't know that he would have been there arguing if it had been an award of one million dollars. Well, based on the finances that we know of, what you just went through, he was unemployed, he's got child support obligations, he's incarcerated. It doesn't lend me to believe, unless he hits the lotto, he's going to have any money to pay any amount of punitive damages. And that is potentially true. And would the jury have known that? Would the jury have had enough evidence to come to that same conclusion and decide that the award that they made was because of the reprehensible nature of this defendant's actions and the serious nature of the harm that he inflicted? Would they have known his financial status? Yeah, and they did. I mean, obviously there was evidence as to his financial status. I think he testified that his hopes was that he would be released from prison, he'd be able to return to work as an iron worker. But as of the time of the trial, he was still incarcerated, and obviously no evidence that he was going to have that work or what he was going to do after his release from prison. But one of the considerations that is to be taken into account in determining whether this is a violation of the due process is a comparison of the punitive damages that are awarded and the civil and criminal penalties that are potentially available. In this case, we would not have any civil penalties, but certainly criminal penalties for this type of action was available. And the defendant was convicted of a Class II and a Class IV felonies. With regard to the Class II felonies, the maximum fine in that situation is $25,000. This $29 million punitive damage award greatly exceeds any criminal penalties that could be assessed against the defendant for his behavior. This award just exceeds the punishment that should be awarded for this defendant's conduct. In one of the cases we cited in our brief, the question of excessiveness also turns on whether the amount is so large that it outruns the justification for exacting punitive damages, namely retribution and deterrence of future outrageous conduct. And that's the Proctor v. Davis case, which we cite in our brief. In this case, exacting $29 million worth of punitive damage certainly exceeds any amount that's needed to justify the punishment and deterrent purposes of awarding punitive damages. In this case, again, this award is just so grossly excessive that it violates the due process clause and arbitrarily deprives the defendant of his property. And for those reasons, we would ask that the punitive damages award be reduced and that the court either enter the remitter or remand it to the trial court with instructions for entry of the remitter as requested by the defendant. Do you think that the fact that this defendant committed another driving while revoked or driving under the influence after the date of this accident played into the jury's consideration when they made their punitive damages award? I expect that it probably did. I mean, they had the information that the history wasn't even accurate. He was convicted on the one that gave rise to this case, that he committed yet another EWI, and that probably, yes, did play into that decision. Thank you. Attorney Webb, I appreciate you're in a little bit of a difficult position here, coming in late and making these arguments, but the answer you just gave to Justice Barbera has covered some of it, but the brief cites reasons to question the amounts awarded here because of the prior criminal history of the defendant and the subsequent history may have served as a basis to support the argument that the result was a consequence of passion or prejudice against the defendant. I understand that. We've got two standards of review here. The question of whether the judge abused discretion in denying the remediator. I take it your argument is going to be based on what you said directed to that issue would be what you've placed before this court, that the amounts justify remediator. It's abuse of discretion not to have granted that, given the disparity between the compensatory and the punitive amounts. Correct. The standard of review for whether the award violated the due process is denoted. So I think once the court makes a determination that it was a violation of the due process, then, of course, whether to grant the remediator is an abuse of discretion, but I think if there's a finding that it violated the due process, then not granting the remediator is an abuse of discretion. I don't think you can even look at the issue of the remediator until there is a finding as to whether or not there's been a violation of the due process clause. So there has to be some basis for determining that the punitive damages award is inappropriate and excessive. Other than the general arguments you made, is there any particular evidence or circumstances from the case that you would suggest deserves more careful review as to what was presented or what should have been presented? We've all read the... You mean presented as far as the punitive damages award? Or the compensatory, you argued. Well, the compensatory, this is not, like I said, was not appealed. That has been accepted. I think the punitive damages, I think more consideration should be given to the defendant's financial status as to whether this is an excessive award and whether he's going to be able to ever pay it. I mean, $30 million is just an amount that he's probably never going to be able to pay. A lower amount, while he may never be able to pay it in full, will give him some incentive to try to pay that award. And so entering a punitive damages award that is just so excessive that he will never be able to make a dent in it, I think goes to show that it is a violation of his due process and the award should be reduced. All right, thanks. Any other questions? Thank you. All right, thank you. Ms. Gale. Thank you, Your Honor. May it please the Court, counsel. Before we start, do you guys have any questions? Okay. Let me ask you this. Yes, sir. We read the briefs. Yes. Of course. And we placed several questions in front of Attorney Webb. Do you want to answer any of those before you start or do you cover that in your? Yes. Well, Judge, I think we covered it in our brief, but there's some things I'd really like to address. And specifically, when we're talking about this due process, if you look at the Gore case, the BMW Gore case, they talk about the reprehensible conduct of the defendant. And in this case, it's undisputed that the defendant had two previous DWIs. It's undisputed that he was drunk and intoxicated. He knew he was intoxicated. He knew people could get hurt and killed. He sped on the wrong way, going down a one-way, hit my client's vehicle, saw him in peril and in horrible shape in the car, and he ran and fled. And then when he was captured by the police, he tried to blame the other drivers, refused to give any blood or do any alcohol testing. A warrant was obtained. Five hours later, he's still twice the limit. Subsequent to that, he goes and he gets another DUI. And then when he's facing his presences, he says he'll take responsibility during that hearing for reduced sentence, but later recants that and says he doesn't want to take responsibility. And then the jury heard extensively about his financial status and heard how he took his insurance money after he knew these claims were all against him, and he liquidated all his assets to settle all his debt and do what he needed to do for him. You know, and the injury and the damage that he caused to this gentleman who was – and they heard the financial status of the plaintiff during the punitive damages. And one thing I would add is we bifurcated this trial. None of this – they didn't hear any of this in the compensatory stage. We bifurcated it to prevent any prejudice to him on these things. And when they heard what he did, and a gentleman that was disabled because of a previous back injury lived in a trailer that now needs 24-hour care and is a child because of a traumatic brain injury, is what they've done to this gentleman. And not to have any absolute remorse or care for this gentleman is why the jury did what they did, because it's not acceptable. And so they wanted to do that to people and not care and to be as flippant as he was about it. And that's ultimately what this all comes down to in the due process. And if you look at this, it's the reprehensibility of the defendant's conduct and the damages that they caused. And these cases specifically – I understand what they're trying to do with the criminal statute, and that's a very creative argument. But I didn't see any of the cases that I read that were cited where they specifically used a criminal statute as a multiplier for some kind of ratio for punitive damages. All the cases that were cited and when that's brought up, and obviously that's an issue. It's brought up in the Gore case with BMW and some of the civil penalties available to these corporations, right? When they have that. The defendant's argument is that if somehow or another I got misplaced towards her, and I saw her on the street, and I intentionally run over her in a parking spot and break her leg, and it has to be amputated, that somehow or another for me to leave the parking and a $10 ticket should be reflected to the punitive damages cases I should have against me. It's just – when you look at it in a different context, it just doesn't hold water. At the end of the day, you know, the conduct – there's been no showing that there was error in this case. We gave the right jury instruction. The defendant got put in at length his financial status to how he couldn't pay this verdict and how he'd never be able to pay it and how he had children and how, you know, that he was an iron worker and he was incarcerated and all of this. And they heard that. It's his conduct and his ability to have any remorse for what he did to this gentleman. And after seeing the man up there that was like a child is why the jury did this. And so to come in here now and to say, well, we can't pay it when the financial status of the defendant, yeah, it should be considered, and it's a factor, and that's in the jury instruction. But it's set forth in the IPI. If you look at it, Judge, the IPI 35.01, the most important factor is the reprehensible conduct of the defendant. And that is the main issue and the main driving force is the defendant did this, did a horrible thing, and had absolutely no remorse whatsoever. And the fact to come in here after the fact and say, well, he can't pay that is, I think, irrelevant at the end of the day. His ability to pay is not, shouldn't be a factor to consider. Now, his financial status is, but I didn't see in any of the cases that I read that the ability of the defendant to pay a verdict or not pay a punitive damage verdict is to be considered. Their financial status is, but not, and that was considered by the jury at length. So, at the end of the day, you know, if you look at the ratio of why it was a substantial punitive damage verdict, it's 4.96 more than the compensatory, which is a number, and I know you guys know the case law very well about the single multiplier in punitive damages and why that's not dispositive, obviously, and there's case law that says that. This court, in one of the cases cited by the defendant in 2000, in the Ford v. Herman case, also had a punitive damage verdict which was 76 times the compensatory. On the drunk driver case, the defendant has not cited one case in which a drunk driver with similar conduct with prior offenses and a subsequent offense, or any prior offenses, with a verdict that was less than five times the compensatory, was overturned on due process. Did not cite one from any other venue, from any other circuit, anywhere in the country. And so, and we cited in our brief what you've read, is that there's numerous cases that support this on the multiplier, and, you know, they presented no evidence that the defendant overlooked, the jury overlooked the defendant's financial status. And again, that's just one factor to be considered here. All the other factors weigh strongly in favor of this verdict. Most importantly is, they send the message to everybody in Southern Illinois, it's not acceptable to repeatedly drink and drive and hurt people and maim them for life. This gentleman's out of jail. He's done it. He's got no other responsibility besides this verdict for what he's done to a man that's going to suffer for the next 20 years. This is it. And to come in here and, I think it's ingenious to say, just because he can't pay it, he should get a pass, I don't think that's consistent with the law in the cases which this court has previously held. Remember, while it wasn't really even addressed much here today, I think that you cited correctly, it's abuse of discretion standard. And again, I don't think that they presented any evidence other than just to say that the number's too big, that Honorable Judge Smith violated their abuse of discretion in holding this verdict. The jury spoke. It was reprehensible conduct that they didn't think was acceptable here in Southern Illinois. And they spoke as the voice of the community about what they thought was acceptable and to try to prevent this behavior before. And it was within the single-digit multiplier and consistent with case law. Judge Smith sat there. She saw Mr. Dedman go on. They saw the condition that he was in. They know the condition he's going to have to live in for the rest of his life because of this gentleman. And she saw the defendant's lack of remorse in his prior conduct. And that's why she upheld this verdict. And we would ask that this court uphold the trial court's verdict and the award of punitive damages of $29,500. Is there any questions from the department? Mr. Packett? No, thank you. Thank you, counsel. Thank you, Your Honor. Just briefly with regard to the issue about the defendant liquidating his assets. And the jury did hear testimony that before he went into prison, yes, he sold his house, the insurance, I think, proceeds from his truck. He testified that he used that to pay medical bills, satisfy his debts because he knew he was going into prison, sold his house because he said he was going to lose it and he didn't want the bank to have it. He wanted to take care of that debt before he went into the house because he would lose that. So his assets there was not done, was not sold or bills paid off in an effort to avoid any liability in the case, but rather to take care of his affairs. There's no doubt, no question, that the reprehensibility of the defendant's conduct. No, I'm not standing up here trying to make any excuses for what he did. But I think when this is looked at and to punish him, this $29.5 million punitive damages is excessive and is in violation of the due process. Unless there's any questions. Any follow-up questions? No, thank you. Thank you, counsel. Obviously, we'll take the matter under advisement. We will issue an order to do courts.